UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| THE PENTECOSTAL CHURCH OF DEQUINCY | CASE NO. 2:22-CV-02782 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| CHURCH MUTUAL INSURANCE CO S I | MAGISTRATE JUDGE LEBLANC |

## MEMORANDUM RULING

Before the Court is "TPCD's Motion to Strike Pursuant to FRCP 12(F); or in the Alternative, Motion for More Definite Statement" (Doc. 143) wherein, the Pentecostal Church of Dequincy ("TPCD") moves to strike the counterclaim of Church Mutual Insurance Company ("Church Mutual") or provide a more definite statement. Specifically, TPCD moves to strike any negligence or intentional torts' causes of action asserted against TPCD.

## BACKGROUND

On August 27, 2020, Hurricane Laura made landfall in Southwest Louisiana. In the original Complaint, the TPCD alleges that it sustained damage from the Hurricane, and that Church Mutual has underestimated the cost of repairs. The five (5) buildings considered as "Covered Property" at issue in this litigation are identified as the: (1) Sanctuary, (2) Activity Center, (3) Sunday School/Fellowship Hall, (4) Mobile Home, and (5) Pole Barn. During the relevant time period, Church Mutual provided coverage for the Covered Property.

TPCD reported its claimed loss on September 1, 2020. For a complete recitation of the facts, see the Memorandum Ruling issued on July 21, 2025.[1]

## LAW AND ANALYSIS

In its Motion, TPCD asserts that after leave was granted by the Court, Church Mutual filed its Amended Answer, Affirmative Defenses, and Counterclaim but for the first time alleged negligence and intentional tort against TPCD for demolishing the educational building and sanctuary.[2] TPCD maintains that Church Mutual did not seek leave of court to file the above-mentioned counterclaim. Initially, Church Mutual sought leave to file a third-party complaint against Keith Meranto and Meranto Construction asserting negligence or intentional tort.[3] TPCD complains that Church Mutual has now substituted TPCD in place of Keith Meranto and Meranto Construction (collectively referred to as "Morento") after the Court denied Church Mutual's motion for leave to file the third-party demand.

TPCD informs the Court that Church Mutual has served it with a summons to answer the counterclaim against TPCD that is *verbatim* the same counterclaim which was filed against Morento. TPCD argues that in the Magistrate Judge's Report and Recommendation, adopted by the undersigned, that the Magistrate Judge's directive was "to excise allegations pertaining to the Third-Party Demand."[4] Additionally, TPCD reminds that Court that pursuant to TPCD's Motion to Strike, this Court granted said

---

[1] Doc. 117.
[2] Doc. 83, ¶ 144.
[3] Doc. 21.
[4] Motion to Strike, Doc 143. p.5.

motion concerning "professional misconduct and criminal activity."[5] TPCD complains that Church Mutual never excised these allegations[6] that were allegedly stricken by the Court.[7] TPCD also reminds the Court that it granted TPCD's motions for partial summary judgment to dismiss Church Mutual's counterclaim.[8]  The Court notes that the ruling only dismissed Church Mutual's counterclaim of fraud.[9] TPCD now moves to strike redundant, immaterial, impertinent, or scandalous matters pursuant to Federal Rule of Civil Procedure 12(f).

TPCD suggests that Church Mutual did not intend to raise allegations of negligence or intentional tort against TPCD when it sought leave of court. TPCD argues that its due process rights have been violated because it "has never been served with a pleading that properly notified it that an allegation of Negligence or Intentional Tort would be brought against it."[10]  TCPD contends first that Church Mutual has not excised the paragraphs ordered by the Court to excise, and second that Church Mutual's gamesmanship of alleging negligence and intentional torts against it, when these claims were originally against Keith Morento and Morento Construction, has deprived TCPD of the opportunity to contest these allegations.

"The Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees. Federal Rule of Civil Procedure 1 (Rules "shall be

---

[5] *Id.*
[6] See ¶ ¶ 11, 29, 31, 32, 33, 34, 35, 47, 59, 62, 66, 67, 84, 91, 96, 97, 119, 121, 125, 128, 129, 130, 131, 132, 133, 135, 139, 140(c), 158, 159, 161, 161, and 164.
[7] Docs. 117 and 118.
[8] *Id.*
[9] *Id.*
[10] Doc. 143, p. 9.

construed and administered to secure the just, speedy, and inexpensive determination of every action."). Rule 15 sets out the requirements for amended and supplemental pleadings." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465, 120 S.Ct. 1579, 1583 (2000). "[D]ue process requirements are met if the requirements of Rule 15 are met." *Id*. Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings.

In its opposition, Church Mutual contends that TPCD's claims that Church Mutual did not seek leave of court to bring its claims of negligence and intentional torts are false. Church Mutual directs the Court to ¶¶ 75, 76, 79, 99, and 138, (not stricken) of Church Mutual's *Amended Answer, Affirmative Defenses and Third-Party Demand and Counterclaim*[11] filed in connection with CMIC's *Motion for Leave to File Third-Party Demand and Counterclaim*[12] includes the following allegations:

- ¶ 75. According to Mr. Kyle and Mr. Meranto the point of hitting the brick with the excavator was because Plaintiff told Mr. Meranto to demo the sanctuary. This fact is omitted by Plaintiff, but Plaintiff surely knew of its own intentions and instructions to its contractor. Those intentions, however, were only discovered after the initial Meranto contract and demo permits became available.

- ¶ 76. This simple fact also belies Plaintiff's newfound "estimates" for repairs, as the buildings that form a majority of the suit were intentionally destroyed at Plaintiff's request. Plaintiff also already had a repair estimate of November 25, 2020.

- ¶ 79. Meranto intentionally demolished the structure at Plaintiff's direction. According to Meranto, this had been the plan since sometime in October-December 2020.

- ¶ 99. To Church Mutual's knowledge, no items were salvaged for continued repairs of the sanctuary or educational building. This included

---

[11] Doc. 51-2.
[12] Doc. 51.

> the brick façade, the windows, the metal studs, HVAC units, toilets, urinals, and other assorted building materials that could have and should have been left in place and/or reused in the repair of the structure, as recommended by Plaintiff's engineer, Walker. These provisions are in the Loss Conditions of the policy upon which Plaintiff suit rests.

- ¶ 138. During the course of discovery, Defendant has learned:

  > a. Plaintiff expended approximately $500,000 to remediate the property with Meranto testifying that the demolition decision was made in or around October 2020. Plaintiff still seeks these costs even though in Meranto's words the remediation was worthless because Plaintiff and he knew the buildings would be destroyed.

  > b. According to Meranto and Plaintiff's pastor at least 4 HVAC units and unknown toilets were sold from the pre-storm structures. Throughout this time, Plaintiff had its HVAC system serviced and repaired. Instead of using the HVAC system returned to its pre-loss condition, Plaintiff purchased an entirely knew [sic] HVAC system and sold or otherwise disposed of the original HVAC system. The same is true for the plumbing fixtures and other unknown items.

Church Mutual comments that after the Court considered its Motion for Leave and proposed pleadings and issued its Report and Recommendation and Judgment, denying Church Mutual's counterclaim against Morento, the Court ordered that:

> Church Mutual Insurance Company S I file a new Answer no later than ten (10) days of this Judgment, composed of the original Answer's eight affirmative defenses and the fifty-four paragraphs responding to Plaintiff's Complaint and those portions of the proposed pleading relevant to the Counterclaim, but excluding allegations that pertain solely to the proposed third-party demand.[13]

---

[13] Doc. 82.

In response to the Court's Order, Church Mutual filed its *Amended Answer, Affirmative Defenses and Counterclaim,*[14] which contains the following allegations:

- ¶ 76. According to Mr. Kyle and Mr. Meranto, the point of hitting the brick with the excavator was because Plaintiff told Mr. Meranto to demo the sanctuary. This fact is omitted by Plaintiff, but Plaintiff surely knew of its own intentions and instructions to its contractor. Those intentions, however, were only discovered after the initial Meranto contract and demo permits became available.

- ¶ 77. This simple fact also belies Plaintiff's newfound "estimates" for repairs, as the buildings that form a majority of the suit were intentionally destroyed at Plaintiff's request. Plaintiff also already had a repair estimate of November 25, 2020.

- ¶ 80. Meranto intentionally demolished the structure at Plaintiff's direction. According to Meranto, this had been the plan since sometime in October-December 2020.

- ¶ 100. To Church Mutual's knowledge, no items were salvaged for continued repairs of the sanctuary or educational building. This included the brick façade, the windows, the metal studs, HVAC units, toilets, urinals, and other assorted building materials that could have and should have been left in place and/or reused in the repair of the structure, as recommended by Plaintiff's engineer, Walker. These provisions are in the Loss Conditions of the policy upon which Plaintiff suit rests.

* ¶ 140. During the course of discovery, Defendant has learned:

a. Plaintiff expended approximately $500,000 to remediate the property with Meranto testifying that the demolition decision was made in or around October 2020. Plaintiff still seeks these costs even though in Meranto's words the remediation was worthless because Plaintiff and he knew the buildings would be destroyed.

> b. According to Meranto and Plaintiff's pastor at least 4 HVAC units and unknown toilets were sold from the pre-storm structures. Throughout this time, Plaintiff had its HVAC system serviced and

---

[14] Doc. 83.

repaired. Instead of using the HVAC system returned to its pre-loss condition, Plaintiff purchased an entirely new HVAC system and sold or otherwise disposed of the original HVAC system. The same is true for the plumbing fixtures and other unknown items.[15] [16] [17]

As such, Church Mutual contends that TPCD's claims that Church Mutual did not seek leave of court is "ridiculous."[18] Church Mutual remarks that this Court differentiated between the proposed third-party demand and the counterclaims and allowed the latter to proceed together with the original answer and affirmative defenses.[19] Specifically, Church

---

[15] Doc. 98-10 - Deposition of Keith Meranto (TPCD's contractor) p. 134 at lines 3-12:
Q: All right. Do you know what happened to the old HVAC?
A: I do.
Q: Okay. Enlighten us.
A: I know -- and I'm being as honest as I can be. Two (2) of the units I know of, because I am actually on the church, were sold by Jason to the church.
Q: The church that you are working on now?
A: Yes, sir.

[16] See Exhibit 1 - Deposition of Pastor Wayne Neyland ( Pastor of TPCD) p. 22 at lines 22-25 and p. 23 at lines 1-7
Q: Were any of the HVAC units sold?
A: We -- yes.
Q: Okay. How many were sold?
A: Maybe, four (4).
Q: Do you know what they were sold -- the price that they were sold for?
A: I don't recall the price that they were sold for.
Q: Did the church receive the funds for the sale of those four (4) units, that you recall?
A: Yes.

[17] *ID.* p. 42 line 25 and p. 43 lines 1-21
Q: Do you recall who -- I know we talked about the wall versus floor toilets. Do you know what happened to the toilets that were in the structure?
A: We -- we sold those.
Q: Okay. Do you recall who you sold them to?
A: Various individuals. I -- I don't know who those individuals are.
Q: Was the church paid for those?
A: The individuals paid for those toilets and those toilets went back into the church fund.
Q: But yeah -- but the church received money for it, right?
A: Correct.
Q: Okay. What about the urinals?
A: I don't think that we sold the urinals. I think, we just had to be done with those.
Q: They were discarded.
A: Yes.
Q: Were any of the urinals damaged from the hurricane?
A: That I don't know

[18] Doc. 145, p. 5.

[19] Docs. 78 and 82.

Mutual notes that the Court did not prohibit factual allegations relevant to Church Mutual's counterclaim that it granted pursuant to Church Mutual's motion for leave to file. Church Mutual comments that the Court only disallowed Church Mutual's third-party demand and directed it to file a new Answer composed of the original Answer's affirmative defenses, paragraphs responding to Plaintiff's Complaint and those portions of the proposed pleading[20] relevant to the Counterclaim but excluded allegations that pertain solely to the proposed third-party demand. Church Mutual informs the Court that it complied with the Court's order on March 6, 2025.[21] Of significance, Church Mutual notes that its allegations of negligence or intentional tort against TPCD were not stricken.[22] The Court agrees with Church Mutual. This Court did not dismiss or strike Church Mutual's allegations of negligence or intentional torts and leave was granted for Church Mutual to file its counterclaim against TPCD, which included these claims. The Court has again revisited Church Mutual's claims and finds that the counterclaim sufficiently states with clarity the claims Church Mutual is bringing against TPCD.

Church Mutual also maintains that TPCD's Motion to Strike is procedurally defective because it could have been raised when TPCD previously filed its Motion to Strike[23] pursuant to Federal Rule of Civil Procedure 12(f).[24] In that motion, TPCD sought to "strike certain allegations and Paragraphs in the Amended Answer, Affirmative

---

[20] Doc. 51-2.
[21] Doc. 83.
[22] Doc. 117.
[23] Doc. 86, and also TPCD's Motion to Dismiss, Doc. 89, and Motion for Partial Summary Judgment, Doc. 85, none of which TPCD moved to dismiss or strike Church Mutual's claims of negligence or intentional torts.
[24] Doc. 86.

Defenses and Counterclaim filed by Defendant, Church Mutual Insurance Company, S.I."[25] That motion was filed on March 27, 2025, and a hearing was held in open court, after which the Court issued its ruling dismissing Church Mutual's fraud claim—the only claim TPCD sought to strike and/or dismiss. Church Mutual argues that Federal Rule of Civil Procedure 12(g)(2)[26] prohibits TPCD from making the instant motion.

The Court notes that TPCD did not move to dismiss Church Mutual's claims of negligence and intentional torts as set forth in its *Amended Answer, Affirmative Defenses and Counterclaim*[27] despite the fact that the counterclaim of negligence and intentional torts was stated and supported by Church Mutual's factual allegations. As such, the Court agrees with Church Mutual that TPCD could have challenged Church Mutual's claims in its earlier motions.[28] Thus, the Court also finds that TPCD's instant motion is procedurally defective.

*Alternative relief*

Alternatively, TPCD requests a more definitive set of allegations that excise the already struck allegations pursuant to Federal Rule of Civil Procedure 12(e). TPCD appears to maintain that it does not understand the nature of the allegations against it considering the Court's past rulings. TPCD complains that it should not have to respond to allegations

---

[25] Doc. 83.
[26] Rule 12(g)(2) states that "Limitation on Further Motions.  Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."
[27] Doc. 83.
[28] Docs. 85, 86, and 89.

that were stricken by the Court. Thus, TPCD requests that Church Mutual serve it with a pleading that does not contain the stricken allegations.

The Court has reviewed Church Mutual's counterclaim, and it appears that even though Church Mutual has removed the allegations against Morento, and the fraud allegations against TPCD, many the remaining factual allegations are directed toward Church Mutuals causes of action concerning negligence or intentional tort. The Court finds that TPCD's request is not warranted.

## **CONCLUSION**

For the reasons explained herein, the Court will deny TPCD's Motion to Strike Pursuant to FRCP 12(F); or in the Alternative, Motion for More Definite Statement (Doc. 143) in its entirety.

**THUS DONE AND SIGNED** in chambers on this 7th day of January, 2026.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**