UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **PENTECOSTAL CHURCH OF DEQUINCY** | **CASE NO. 2:22-CV-02782** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHURCH MUTUAL INSURANCE CO S I** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the Court is a "Motion to Exclude Testimony of Neal Wright" (Doc. 153) filed by The Pentecostal Church of DeQuincy ("TPCD").

## BACKGROUND

On August 27, 2020, Hurricane Laura made landfall in Southwest Louisiana. In the original Complaint, The Pentecostal Church of DeQuincy ("TPCD") alleges that it sustained damage from the Hurricane, and that Church Mutual has underestimated the cost of repairs. The five (5) buildings considered as "Covered Property" at issue in this litigation are identified as the: (1) Sanctuary, (2) Activity Center, (3) Sunday School/Fellowship Hall, (4) Mobile Home, and (5) Pole Barn. During the relevant time period, Church Mutual provided coverage for the Covered Property.

TPCD reported its claimed loss on September 1, 2020. For a complete recitation of the facts, see the Memorandum Ruling issued on July 21, 2025.[1]

---
[1] Doc. 117.

TPCD asserts that on or about September 16, 2020, TPCD retained a public adjuster, Chris Tremaine. Mr. Tremaine worked with Church Mutual's field adjuster, Trey Johnson, to schedule a joint inspection of TPCD's campus on September 30 and October 1, 2020. Mr. Tremaine worked with Kelly Spence, a specialist for the estimating program, Xactimate. However, due to the volume of cases Mr. Tremaine and Mr. Spence were undertaking, they retained Joe Taylor to perform the preliminary task of taking measurements and developing rough Xactimate estimates for TPCD's campus buildings.

Mr. Taylor produced rough estimates for five (5) structures dated November 25, 2020. Kelly Spence then reviewed these rough estimates and made necessary corrections to measurements and building finishes for the three larger structures, the Sanctuary, Sunday School, and Activity Center. These three (3) corrected Xactimate estimates were completed on or about December 9 and December 10, 2020.

Mr. Tremaine's organization produced five (5) Xactimate estimates to Church Mutual on January 13, 2021.3 These were the following:

1. Joe Taylor's November 25, 2020 Pole Barn estimate;

2. Joe Taylor's November 25, 2020 Mobile Home estimate;

3. Kelly Spence's December 10, 2020 corrected Sanctuary estimate;

4. Kelly Spence's December 10, 2020 corrected Sunday School estimate;

5. Kelly Spence's December 8, 2020 corrected Activity Center estimate,

Joe Taylor's November 25, 2020 rough estimates for the Sanctuary, Sunday School and Activity Center were never produced to CMI as part of the claim adjustment process.

However, they were produced two years after the loss as part of the court-ordered *Initial Discovery Protocols.*[2]

## LAW AND ANALYSIS

TPCD moves to exclude Mr. Wright's expert testimony that it suggests consists of the calculation of the difference of three (3) rough estimates that were never produced to Church Mutual for claim purposes with three (3) corrected versions that were presented to Church Mutual. TPCD argues that this simple task does not involve any specialized knowledge (only a calculator) and clearly will not provide any assistance to the trier of fact. As such, TPCD contends that Mr. Wright's proposed testimony fails to satisfy the admissibility standards of Federal Rules of Evidence, Rule 702.

702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Federal Rule of Evidence 702.

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant

---

[2] Doc. 3-1/

and reliable. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based. The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). "The role of the trial court is to serve as the gatekeeper for expert testimony b making the determination of whether the expert opinion is sufficiently reliable." *Stewart v. Family Dollar, Inc.*, 2025 WL 2787898, at *5 (M.D. La. Sept. 11, 2025).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting Daubert, 509 U.S. at 596).

TPCD moves to exclude Mr. Wright's opinions concerning a comparison of the three (3) rough estimates not produced to Church Mutual for claim purposes with the three "corrected" version that were presented to Church Mutual.

Church Mutual has retained Mr. Wright, a senior forensic building consultant, whose experience includes conducting thousands of building inspections and more than 2,000 post-catastrophe inspections following major hurricanes. He regularly prepares and analyzes repair estimates.[3] Church Mutual remarks that Mr. Wright inspected the TPCD properties on March 27, 2024, and reviewed an exhaustive list of estimates, photographs, and documents associates with this litigation. He then authored a detailed expert report which includes an analysis of the November 25, 2020, and December 8-10, 2020, Exact Estimates produced by Plaintiff.[4]

Mr. Wright testified that he his role included the following: "analyze the data that's provided, do a comparative analysis of photographs, create an estimate using Xactimate and RSMeans to further the process, and put a price on the recommended scope of repairs. . ."[5] Church Mutual argues that Mr. Wright's testimony will assist the trier of fact because he conducted a line-by-line comparative analysis of complex estimates to identify changes in quantities, materials, scope, and pricing which requires specialized knowledge of estimating methodology and construction practices. Church Mutual contends that the two estimates reflect a change in scope, quantities or materials because they both utilized the

---

[3] Plaintiff's exhibit 2, Doc. 153-3, Neil Wright CV.
[4] Plaintiff's exhibit 2, Doc. 153--2, Neil Wright Report.
[5] Plaintiff's exhibit 1, Doc. 153-2, Neil Wright Deposition.

same October 2020 price list. Thus, Church Mutual posits that Mr. Wright's testimony is necessary and helpful to understand where the increases originated and what they represent.

TPCD moves to exclude the first Exact Estimate because it was not the estimate that it submitted to Church Mutual for its claim of damages. Church Mutual argues that its expert should have the opportunity to explain to the jury, line-item-by-line-item, each change which resulted in an increase of $274,707.83 in estimated damages from its initial estimate. Church Mutual argues that this information is relevant to its counterclaims of intentional tort and negligence against TPCD. In other words, to prove that TPCD submitted inflated or unsupported estimates when it submitted its claim to Church Mutual. Church Mutual also contends that its experts should be allowed to analyze materials produced in discovery to show the existence of materially different estimates prepared by Plaintiff's representative, which goes to TPCD's credibility, consistency, and intent. The Court agrees with Church Mutual that this evidence is relevant and admissible.

## CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that the Motion to Exclude Testimony of Neal Wright (Doc. 153) is **DENIED.**

**THUS DONE AND SIGNED** in chambers on this 4th day of February, 2026.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE