UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **PENTECOSTAL CHURCH OF DEQUINCY** | **CASE NO. 2:22-CV-02782** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHURCH MUTUAL INSURANCE CO S I** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the Court is a "Motion to Exclude Testimony of Lori Cox" (Doc. 155) filed by The Pentecostal Church of DeQuincy ("TPCD").

## BACKGROUND

On August 27, 2020, Hurricane Laura made landfall in Southwest Louisiana. In the original Complaint, The Pentecostal Church of DeQuincy ("TPCD") alleges that it sustained damage from the Hurricane, and that Church Mutual has underestimated the cost of repairs. The five (5) buildings considered as "Covered Property" at issue in this litigation are identified as the: (1) Sanctuary, (2) Activity Center, (3) Sunday School/Fellowship Hall, (4) Mobile Home, and (5) Pole Barn. During the relevant time period, Church Mutual provided coverage for the Covered Property.

TPCD reported its claimed loss on September 1, 2020. For a complete recitation of the facts, see the Memorandum Ruling issued on July 21, 2025.[1]

---

[1] Doc. 117.

## LAW AND ANALYSIS

TPCD moves to exclude the opinions of Lori Cox. TPCD maintains that Ms. Cox's opinions will not assist the trier of fact, and they are unreliable and redundant. TPCD contends that Ms. Cox does not rely upon any recognized engineering methodology or engineering analysis, and that Church Mutual already has an engineering expert, Michael Stenstrom, who inspected the TPCD property in October 2020 and published his report in November 2020. Thus, TPCD complains that Ms. Cox's opinions are redundant.

702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Federal Rule of Evidence 702.

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of

Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based. The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). "The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable." *Stewart v. Family Dollar, Inc.*, 2025 WL 2787898, at *5 (M.D. La. Sept. 11, 2025).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting Daubert, 509 U.S. at 596).

TPCD argues that Ms. Cox's testimony does not rely on any recognized engineering methodology or engineering analysis, and that she ignores a plethora of evidence. TPCD complains that Ms. Cox's evaluation of the Sanctuary and Sunday School buildings was limited to a review of photographs and other engineers' reports.

The Court has reviewed Ms. Cox's expert report to address TPCD's complaints and find that they are unfounded. The Court notes that Ms. Cox performed a site inspection of the TPCD buildings/structures, but the Sanctuary and Sunday School had already been demolished and rebuilt. TPCD complains that Ms. Cox commented that she could not see water intrusion from a certain photograph.[2] Then TPCD states that evidence of moisture intrusion was available to Ms. Cox through Church Mutual's records when UBS personnel preformed moisture meter analysis and documented areas where the wet walls need to be removed.[3]

The Court is confused as to what TPCD is trying to argue here. Ms. Cox's report acknowledges that there was "[m]oisture intrusion through the roof coverings where the steeple punctured the west roof slope."[4] Ms. Cox also noted that there was moisture intrusion "through weathered and expired storefront glazing."[5] She also concluded that "[m]oisture intrusion to the Old Sanctuary building was remediated by both ServiceMaster of Wichita Falls (Service Master) and RoadRunner Restoration (Roadrunner), in which ServiceMaster submitted an invoice of services for $121,827.16 and Roadrunner submitted an invoice for $369,383.778."[6] She also found that "Storm-created openings were noted in the west roof slope where the steeple impacted the west roof slope. This allowed moisture intrusion to the sanctuary area of the building."[7] Ms. Cox also observed that there was

---

[2] Plaintiff's exhibit 7, Cox deposition, p. 84:5-19.
[3] Plaintiff's exhibit 8.
[4] Plaintiff's exhibit 6, Cox Report, p. 21.
[5] *Id.* p. 22.
[6] *Id.* p. 23.
[7] *Id.*

"[w]et insulation, displaced and stained ceiling tiles, and limited displacement of the metal ceiling tile grid were documented in various photographs. These areas required repair to include removal of wet insulation, and damaged ceiling tile and repair of the ceiling tile grid. These items and areas affected by water intrusion from the breaches created in the west roof slope should have been properly removed and remediated by the work performed by both Service Master and RoadRunner."[8]

Next, TPCD criticizes Ms. Cox's report because she allegedly did not give adequate evaluation of the pre-existing conditions of the buildings, referring to TPCD's previous insurance claim as a result of the 2017 tornado. Again, the Court is confused as to what TPCD is complaining about. Ms. Cox acknowledge that there was a "fractured and bowed roof framing of the Sunday School [that] was documented following the 2017 tornado effect.... This was documented in the estimate provided by Risk Management Services (CMIC 05445-0560)."[9] TPCD does not inform the Court as to how Ms. Cox's report is unreliable, nor does TPCD explain how her methodology is inappropriate.

TPCD complains that Ms. Cox did not perform "any mathematical equations to determine the lateral loads that were presented to the building as a result of the hurricane...," and she ignored one of Church Mutual's photographs taken 11/22/2017 that TPCD alleges shows no visible damage on the roof.[10] Ms. Cox stated in her report that water intrusion in TPCD's Activity Center was not caused by Hurricane Laura, but was

---

[8] *Id.*
[9] D. p. 24.
[10] Doc. 155-1, p. 10.

cause by maintenance issues on the roof and holes where screws were missing or broken off."[11]

Again, TPCD does not explain how Ms. Cox's report is unreliable, and how her methodology is inappropriate because she did not perform any engineering calculations to determine lateral loads that were presented to the buildings as a result of the hurricane. TPCD will be given ample opportunity to cross-exam Ms. Cox at trial to challenge her opinions and question her about her conclusions that TPCD suggests are contrary to observations by Trey Johnson and Michael Stenstrom or that ignore other evidence. However, this is not a basis to exclude Ms. Cox's testimony and opinions.

TPCD argues that Ms. Cox's testimony and opinions are duplicated of Church Mutual's principal expert, Michale Stenstrom, an engineer that performed inspections of the property in October 2020, and published a report of his finding on November 2, 2020. Church Mutual argues that Ms. Cox's testimony is not duplicative. Church Mutual informs the Court that Mr. Stenstrom's work in this matter was to perform a limited visual inspection of the sanctuary, Sunday School and multipurpose building and recommend repairs/remediation of damages, whereas Ms. Cox was to inspect the structures at issue and document their conditions with regards to improvement made following Hurricane Laura and/or Hurricane Delta. To that end, Ms. Cox reviewed materials supplied by Church Mutual that were obtained throughout this litigation. Church Mutual instructed Ms. Cox to provide an opinion as to the damage that was the result of Hurricane Laura; her analysis

---

[11] Plaintiff's exhibit 7, Cox deposition, pp. 31:24-32:2.

of the pre and post Hurricane Laura conditions of the Sanctuary and Fellowship Hall/Sunday School was performed through the review of documented conditions. Additionally, Ms. Cox's scope of work required that she describe the necessary actions taken following the passage of Hurricane Laura and the improvements made to TPCD's property compared to the condition of the property before Hurricane Laura.

The Court recognizes that there will be some overlap in Mr. Stenstrom and Ms. Cox's testimony, but based on the different scopes of work, the Court finds that Ms. Cox's is not duplicative.

## **CONCLUSION**

For the reasons explained herein,

**IT IS ORDERED** that the Motion to Exclude Testimony of Lori Cox (Doc. 155) is **DENIED.**

**THUS DONE AND SIGNED** in chambers on this 4th day of February, 2026.

```
            JAMES D. CAIN, JR.
      UNITED STATES DISTRICT JUDGE
```