UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **PENTECOSTAL CHURCH OF DEQUINCY** | **CASE NO. 2:22-CV-02782** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHURCH MUTUAL INSURANCE CO S I** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the Court is "CMIC's Motion in Limine to Exclude or Limit Testimony of Robert D'Aunoy with Husky Estimating" (Doc. 156).

On August 27, 2020, Hurricane Laura made landfall in Southwest Louisiana. In the original Complaint, The Pentecostal Church of DeQuincy ("TPCD") alleges that it sustained damage from the Hurricane, and that Church Mutual has underestimated the cost of repairs. The five (5) buildings considered as "Covered Property" at issue in this litigation are identified as the: (1) Sanctuary, (2) Activity Center, (3) Sunday School/Fellowship Hall, (4) Mobile Home, and (5) Pole Barn. During the relevant time period, Church Mutual provided coverage for the Covered Property.

TPCD reported its claim loss on September 1, 2020. For a complete recitation of the facts, see the Memorandum Ruling issued on July 21, 2025.[1]

---
[1] Doc. 117.

## LAW AND ANALYSIS

In its Motion to Exclude or Limit, Church Mutual maintains that Husky's estimates, prepared by Mr. D'Aunoy, do not meet the *Daubert* standards. Church Mutual complains that the methodology that Mr. D'Aunoy used cannot be tested. Moreover, no one other than Mr. D'Aunoy could reach the same numbers because the line items in the spreadsheet created by Mr. D'Aunoy could not be duplicated by anyone but Mr. D'Aunoy. Church Mutual informs the Court that Mr. D'Aunoy testified that he had no issues with Exact Inventory, Inc.'s estimate, and yet Mr. D'Aunoy's estimate was approximately $2.7 million higher than the Exact Inventory estimate. Church Mutual argues that the methodology Mr. D'Aunoy cannot be tested, and due to the vast difference in these amounts, Church Mutual demands an explanation.

Mr. D'Aunoy created an Excel spreadsheet using the scope of work prepared by TEI, Tremaine Enterprises, Inc. and reviewing photographs of the damaged buildings. The Court has reviewed the spreadsheet, which contains the following titled columns: Div. 1 General Conditions; no title; Description; Unit; Quantity; Unit Material; Total Material; Unit Labor; Total Labor; Total; Division Total; Sub-Contr. Price; Sub-Contr. Name; Percent of Total. Additionally, there are other columns that are titled: Area Survey and SF,[2] which appear to identify floor levels and roof areas. Each floor level is then detailed and broken down into smaller areas (such as Entry Foyer, Reception, etc.) that includes the

---

[2] Square Feet.

square feet of each area. Mr. D'Aunoy provides a section of the total spreadsheet to include all five (5) buildings/structures that were allegedly damaged by Hurricane Laura.

Mr. D'Aunoy explained that he got his numbers based on his experience.[3] He then testified that someone with different experience than his would come up with a different number.[4] Mr. D'Aunoy then explained that he prepared the spreadsheet estimate based on what he would charge to do the work.[5] To obtain his pricing, Mr. D'Aunoy called certain vendors in each area of skill or trade ("trade partners"), such as for the steeple, carpentry, floors, electrical, plumbing, HVAC, etc. and came up with a "conservative"[6] number. Specifically, he testified that he "did a base price on an average cost,"[7] using "a few estimates that I did during that year, and looked at some of the pricing that pertained to the project, with similar type projects."[8] He also testified that he used pricing "[d]epending upon which subcontractor []picked, because you would—you would get three (3) different numbers"[9] and average the numbers to "predict the best possible scenario for the project."[10] Mr. D'Aunoy testified that he would call certain vendors on the phone and ask them what the going rate was for today, such as flooring companies, but he had no documentation to support his numbers, relying solely on a verbal quote over the phone.[11] Summarizing, Mr. D'Aunoy relied on his own historical database of costs for pricing in August 2020, and

---

[3] Defendant's exhibit 156, pp. 41:19-23; 43:3-5.
[4] *Id.* p. 42:3-12.
[5] *Id.* p.64.
[6] *Id.* p. 90:17.
[7] *Id.* p. 73:18-19.
[8] *Id.* pp. 78:12-15; 91.
[9] *Id* p. 93:7-40.
[10] *Id.* p. 93:13-14.
[11] *Id.* pp. 95-97.

then he reached out to "trade partners" to confirm and verify those costs. He then evaluated the scope of work provided to him and translated his work into a contracting format.

702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Federal Rule of Evidence 702.

The trial court serves as gatekeeper in determining the admissibility of expert testimony, by making an initial determination of whether the expert's opinion is relevant and reliable. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). This gatekeeping function extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based. The proponent of the expert testimony bears the burden of proving its admissibility, by a preponderance of the evidence. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). "The role of the trial court is to serve as the gatekeeper for expert testimony by

making the determination of whether the expert opinion is sufficiently reliable." *Stewart v. Family Dollar, Inc.*, 2025 WL 2787898, at *5 (M.D. La. Sept. 11, 2025).

The trial court has broad latitude in determining the admissibility of expert testimony. *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system." *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC*, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Scordill*, 2003 WL 22427981 at *3 (quoting *Daubert*, 509 U.S. at 596).

TPCD explains that the purpose of Mr. D'Aunoy's testimony is to " 'provide pricing to repair, to like kind & quality, five buildings damaged by Hurricane Laura' " as of the date of the loss, August 27, 2020. TPCD suggests that Mr. D'Aunoy utilized documented material lists and scopes of work provided by Tremaine Enterprises to provide pricing to repair using the "traditional forty-eight Division Construction Specification Institute format to produce his five (5) estimates in an excel spreadsheet.[12] TPCD complains that Church Mutual failed to produce an expert to evaluate the accuracy of Mr. D'Aunoy's fixed pride bids with 2020 pricing.

---

[12] Plaintiff's exhibit 2, June 25, 2024, Expert Report, p. 2.

Church Mutual argues that Mr. D'Aunoy's methodology is unreliable, unrepeatable and unfounded. Church Mutual notes that Mr. D'Aunoy has never been to TPCD site, either before or after Hurricane Laura.[13] Church Mutual complains that Mr. D'Aunoy (Husky's) bid does not specify the type of flooring in specific rooms, the type of roof, and is generally not specific as to pricing.[14]

"A key inquiry illuminating whether a methodology is reliable is whether it can be tested (and repeated) or subjected to peer review or publication." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 570, 588 (1993). Church Mutual notes that Mr. D'Aunoy testified that to duplicate the numbers, "[y]ou would need me."[15] Mr. D'Aunoy also conceded that his numbers could not be repeated.[16] When asked at his deposition to identify certain "trade partners" from which he obtained his pricing, Mr. D'Aunoy testified, "I'd rather not say,"[17] or I "talk to whoever answers," or "I know my own labor rates to do framing for wood and metal studs."[18] When asked if he took notes when he made phone calls to get his pricing, Mr. D'Aunoy testified "[v]ery little. There might have been some scribbles, or if I was on the phone with them and they gave me an answer, I plugged it in right down – right then and there –."[19]

The Court finds that Mr. D'Aunoy's fixed-price bid does not meet the requirements of Rule 702 of the Federal Rules of Civil Procedure and *Daubert.* Mr. D'Aunoy's fixed-

---

[13] Defendant's exhibit 1, p. 22.
[14] *Id.* pp. 73-75, 95, 135.
[15] Defendant's exhibit 1, p. 162:20-24, Doc. 156-2.
[16] *Id.* pp. 130:6-14; 42:3-12.
[17] *Id.* p. 216:25.
[18] *Id.* pp. 216:7-25 and 217.
[19] *Id.* pp. 220:19-25 – 221:1.

priced bid cannot be repeated; it cannot be tested. His methodology is flawed, and the fixed-priced bid is unreliable, therefore, inadmissible.

## CONCLUSION

For the reasons explained herein,

**IT IS ORDERED** that CMIC's Motion in Limine to Exclude or Limit Testimony of Robert D'Aunoy with Husky Estimating (Doc. 156) is **GRANTED**; Mr. D'Aunoy is precluded from offering testimony in the trial of this matter and the Husky fixed-price bid will be excluded.

**THUS DONE AND SIGNED** in Chambers on this 4th day of February, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**